**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Michael L. Felpel, | : Civil Action |
| | : |
| Plaintiff | : No. |
| | : |
| v. | : Jury Trial Demanded |
| | : |
| United Parcel Service, Inc., | : |
| | : |
| Defendant | : |

## COMPLAINT

### Introduction

1. Michael L. Felpel ("Felpel") is suing his former employer, United Parcel Service, Inc. ("UPS" or "Defendant"), for disability discrimination, failure to provide reasonable accommodations, retaliation, interference with protected leave, and constructive discharge.

2. Felpel brings this action under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.* (ADA); the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* (FMLA); and the Pennsylvania Human Relations Act, 43 P.S. §§ 951 *et seq.* (PHRA).

3. Felpel seeks back pay, front pay or reinstatement, loss of earnings capacity, compensatory damages, punitive damages (under the ADA), liquidated damages (under the FMLA), interest, negative tax consequence damages, restoration of health insurance and pension benefits, injunctive relief, and attorney's fees and costs.

### Jurisdiction And Venue

4. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. Supplemental jurisdiction over the PHRA claims exists under 28 U.S.C. § 1367(a).

5. All jurisdictional prerequisites have been satisfied: Felpel timely dual-filed Charges of Discrimination with the Equal Employment Opportunity Commission (EEOC) and the

1

Pennsylvania Human Relations Commission (PHRC) on June 21, 2024 (EEOC Nos. 530-2024-05246 and 530-2024-06809), December 10, 2024 (EEOC No. 530-2025-01903), and May 21, 2025 (EEOC Charge No. 530-2025-06344), all alleging disability discrimination, failure to accommodate, retaliation, and related violations. Felpel requested Notices of Right to Sue from the EEOC on March 27, 2025. As of the filing of this Complaint, Felpel has not yet received the Notices, although the EEOC acknowledged receipt of the request on April 1, 2025, and indicated it would process the request as soon as possible. Felpel has otherwise exhausted all required administrative remedies with respect to the claims asserted herein. (FMLA claims asserted in this action do not require EEOC exhaustion.)

6.  Venue is proper in the Eastern District of Pennsylvania under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in Lancaster County, Pennsylvania, where Felpel worked and resides.

### The Parties

7.  Felpel is an adult individual and citizen of the United States who resides in Lititz, Pennsylvania (Lancaster County).

8.  Felpel is disabled within the meaning of the ADA and the PHRA because he has a physical impairment that substantially limits one or more major life activities, including working, performing manual tasks, and standing or driving for extended periods. Felpel's disability required a period of non-driving work after diagnosis and, after attempting to work without limitations for approximately six months, a permanent limitation on daily work hours to avoid exacerbation.

9.  Defendant United Parcel Service, Inc. is a corporation doing business throughout Pennsylvania with a local facility at 1155 Enterprise Road, East Petersburg, Pennsylvania 17520, and a principal place of business at 55 Glenlake Parkway NE, Atlanta, Georgia

2

30328. UPS employs more than 500 employees and is an "employer" as defined by the ADA, FMLA, and PHRA.

10. At all relevant times, UPS acted through its agents, employees, and supervisors (including managers Chad Quivers and HR representatives Quiana Emmons and Kristen VanderSande), who were acting within the scope of their employment and authority.

## Factual Background

11. Felpel began employment with UPS in June 1992 as a preloader for approximately two years, and as a Package Car Driver for the remainder of his tenure until his constructive discharge.

### Felpel's Long-Term Employment and Disability Diagnosis

12. In April 2023, Felpel was diagnosed with a disability. He promptly notified manager Chad Quivers. Because of the diagnosis, Felpel required a waiting period before he could drive again. Quivers placed him in a non-driving pre-load and cleaning position for 8 hours per day/40 hours per week until he recertified his Department of Transportation (DOT) card.

13. Felpel was DOT-cleared on June 30, 2023, and returned to his driving position in July 2023.

### Felpel's Requests for FMLA and ADA Accommodations

14. On January 16, 2024, Felpel applied for FMLA leave through third-party administrator The Hartford Group, requesting a modest accommodation: reduction of one hour per day (normal schedule 9:00 a.m.–7:30 p.m. (10.5 hours including 30-minute lunch) changed to 9:00 a.m.–6:30 p.m. (9.5 hours including lunch)).

15. The FMLA accommodation was approved on February 1, 2024, and remained in effect through December 31, 2024.

16. Felpel simultaneously requested the identical accommodation under the ADA in January 2024. On February 14, 2024, HR representative Quiana Emmons responded: "Your accommodation can be provided to you pursuant to the FMLA policy and procedures and your ADA accommodation request has been closed."

### Revocation of Approved FMLA Accommodation

17. The FMLA accommodation was honored for approximately five weeks. After Felpel returned from scheduled vacation on April 15, 2024, he was summoned to a meeting with union steward, himself, and manager Chad Quivers. Quivers informed Felpel that the FMLA accommodation would no longer be honored and that he must apply for the identical accommodation through the ADA process. Felpel was immediately placed on unpaid leave.

### Denial of ADA Reasonable Accommodation

18. Between April 15 and May 21, 2024, Felpel attempted to resolve the issue through HR, union grievance, and a union hearing on May 21, 2024. On May 21, 2024, after the hearing, Felpel submitted medical documentation for his ADA request; his physician faxed the completed ADA form to UPS the same day, a second time.

19. On May 30, 2024, Quiana Emmons denied the ADA request by email: "Your accommodation can be provided to you pursuant to the FMLA policy and procedures and your ADA accommodation case has been closed." At that point, the FMLA accommodation had already been revoked. Felpel forwarded the denial to his union representative, who sent it to UPS Labor Relations. Felpel has remained on unpaid leave since April 15, 2024.

4

**Retaliatory Cutoff of Health Insurance and Pension Benefits**

20. On September 15, 2024 (effective October 1, 2024), UPS unilaterally stopped paying health-insurance premiums toward Felpel's coverage and had already ceased pension contributions. Felpel received no explanation. The collective-bargaining agreement provides continued coverage during "disability" until at least April 1, 2025, and nine months of continued benefits after placement on unpaid leave.

21. On December 10, 2024, Felpel filed an additional EEOC charge (EEOC No. 530-2025-01903) alleging ongoing retaliation through the cutoff of health insurance and pension benefits.

**Felpel's 2025 Re-Application and UPS's Continued Silence**

22. On January 6, 2025, Felpel reapplied for both FMLA and ADA accommodations. His physician faxed the required forms on January 10, 2025. On January 13, 2025, UPS approved leave for the entirety of 2025 under UPS's Leave for Family and Medical policy because Felpel's 2024 work hours did not meet federal FMLA eligibility requirements.

23. On January 14, 2025, HR contacted Felpel to schedule an ADA checklist meeting. The meeting occurred January 16, 2025, with Patricia Lorio (Occupational Health) and Kristen VanderSande (HR Geo Services Supervisor). Felpel completed his portion of the paperwork. No decision or further communication followed.

24. On January 23, 2025, Felpel left a voicemail for VanderSande requesting a decision by January 30, 2025. He received none.

**Constructive Discharge and UPS's Deliberate Disregard and Ratification**

25. After nearly ten months without regular income (except limited vacation, sick, and personal days), loss of health insurance for four months, halted pension contributions, and no accommodation or reinstatement, Felpel had no reasonable alternative but to resign. On

February 1, 2025, he took early retirement (constructive discharge), effective April 1, 2025 per his final EEOC charge. He notified HR by email the same day.

26. Felpel's resignation was not voluntary. It was compelled by UPS's repeated refusal to accommodate his disability, revocation of an approved FMLA accommodation, prolonged unpaid leave, termination of essential benefits in violation of the collective-bargaining agreement, and escalating retaliation for protected activity.

27. UPS never engaged in the interactive process required by the ADA. Instead, it forced Felpel into a Hobson's choice: work full 10.5-hour days without accommodation (risking health) or remain on unpaid leave indefinitely without benefits.

28. UPS's actions represent a continuing pattern of retaliation for Felpel's requests for accommodations and FMLA leave and his filing of multiple EEOC charges (Nos. 530-2024-05246, 530-2024-06809, and the December 2024 charge (EEOC No. 530-2025-01903).

29. At all relevant times, UPS knew Felpel was disabled within the meaning of the ADA, knew he had medical documentation supporting a one-hour daily reduction, knew the FMLA accommodation had been formally approved through December 31, 2024, and was renewed by UPS's own Leave for Family and Medical policy through December 31, 2025, and knew the collective-bargaining agreement required continued health insurance and pension contributions during disability leave. Despite this actual knowledge, UPS's managers and HR decision-makers (Quivers, Emmons, and VanderSande) repeatedly denied the accommodation, revoked the approved FMLA leave, placed Felpel on indefinite unpaid leave, cut off his benefits in violation of the CBA, and then ignored his January 2025 re-application and deadline. These actions were not the result of isolated error; they

6

were ratified at multiple levels of UPS management and demonstrate reckless indifference to Felpel's federally protected rights.

30. UPS's actions have caused Felpel significant financial loss, as well as emotional distress, career damage, loss of earnings capacity, mental anguish, humiliation, embarrassment, and loss of dignity.

## Count I
## Violation of the ADAAA and PHRA – Disability Discrimination and Failure to Provide Reasonable Accommodation

31. Felpel incorporates the preceding paragraphs.

32. Felpel is a qualified individual with a disability. He could perform the essential functions of his Package Car Driver position with the reasonable accommodation of a one-hour daily reduction in hours.

33. UPS knew of Felpel's disability and need for accommodation through multiple medical submissions, FMLA approvals, and direct communications.

34. UPS failed to provide the requested reasonable accommodation, failed to engage in the interactive process, and instead placed Felpel on indefinite unpaid leave and ultimately constructively discharged him. These actions violate the ADAAA and PHRA.

## Count II
## Violation of the ADAAA and PHRA – Retaliation

35. Felpel incorporates the preceding paragraphs.

36. Felpel engaged in protected activity by requesting ADA accommodations and filing EEOC charges. UPS retaliated with adverse actions including revocation of approved FMLA leave, denial of ADA accommodation, unpaid leave, cutoff of benefits, and constructive discharge. The temporal proximity and pretextual shifting explanations establish causation.

7

### Count III
### Violation of the FMLA – Interference

37. Felpel incorporates the preceding paragraphs.

38. UPS interfered with Felpel's rights by revoking an approved FMLA reduced-hours accommodation mid-year without justification and by conditioning his return on a separate ADA process that was itself denied.

### Count IV
### Violation of the FMLA – Retaliation

39. Felpel incorporates the preceding paragraphs.

40. UPS retaliated against Felpel for taking and requesting FMLA-protected leave by revoking the accommodation, placing him on unpaid leave, terminating benefits, and constructively discharging him.

### Requested Relief

WHEREFORE, Plaintiff Michael L. Felpel respectfully requests this Court:

A. Issue a Declaratory Judgment declaring that UPS's actions as set forth in this Complaint are unlawful and violate the ADAAA, the PHRA, and the FMLA.

B. Issue equitable/injunctive relief including:

(1) Issue preliminary and permanent injunctions enjoining and restraining UPS, its officers, agents, employees, and those acting in participation with UPS from engaging in any act or practice of harassment, discrimination, and/or retaliation against employees in violation of the ADAAA, the PHRA, and the FMLA.

(2) Order UPS to provide training to all employees on harassment, discrimination, and retaliation prevention and related compliance under the ADAAA, the PHRA, and the FMLA—with the training specifics to be tailored to the problems, deficiencies, and gaps that the evidence shows.

8

(3) Order UPS to deliver to its employees a copy of the jury verdict and trial court judgment.

(4) Order UPS to report on the manner of compliance with the terms of any final order for non-monetary equitable relief issued under the ADAAA, the PHRA, and the FMLA—with the reporting specifics to be tailored based on the evidence.

(5) Order UPS to reinstate Felpel upon such terms and conditions as will put him in the position he would have occupied had UPS not unlawfully discriminated and retaliated against Felpel.

C. Enter judgment in favor of Felpel and against UPS for back pay, including wages and fringe benefits.

D. Enter judgment in favor of Felpel for front pay in lieu of reinstatement.

E. Enter judgment in favor of Felpel and against UPS for compensatory damages for emotional distress, career damage, loss of earnings capacity, mental anguish, humiliation, embarrassment, and loss of dignity.

F. Enter judgment in favor of Felpel and against UPS for punitive damages, as allowable by law.

G. Enter judgment in favor of Felpel and against UPS for liquidated damages, as allowable by law.

H. Award Felpel reasonable attorney's fees together with the costs of this action.

I. Award Felpel pre-judgment and post-judgment interest.

J. Enter judgment in favor of Felpel for any other monetary losses as a direct result of UPS's violations of the ADAAA, the PHRA, and the FMLA, including but not limited to negative tax consequence damages.

K. Award such other and further legal and equitable relief as may be necessary and appropriate to redress fully the deprivation of Felpel's rights, to prevent their recurrence in the future and to protect other employees from such unlawful behavior.

## <u>**Jury Demand**</u>

Felpel hereby demands a jury to try all claims triable by jury.

Respectfully submitted,

Dated: April 15, 2026

Stephanie J. Mensing
PA ID No. 89625
Mensing Law LLC
1515 Market Street, Suite 1200
Philadelphia, PA 19102
(215) 586-3751; (215) 359-2741 fax
stephanie@mensinglaw.com
Attorney for Plaintiff